May it please the Court, Counsel. My name is Christina O'Connor. I'm the Assistant Appellate Defender at the Office of the State Appellate Defender, and I represent Mr. Nigel O'Connor. This case deals with a first-stage post-conviction petition summary dismissal. In his post-conviction petition, Nigel asserted that the sentence he received for an offense he committed when he was 19 years old violates the LMI Proportionate Penalties Clause based on his personal characteristics and the new research regarding brain development. Nigel did exactly what our Supreme Court has asked similarly situated youthful individuals to do, and this Court should reverse the trial court's summary dismissal and remand for second-stage proceedings. As an initial matter, Nigel did argue in his post-conviction petition and opening brief that his 33-year sentence was a de facto life sentence, and that his sentence was precluded by both the Eighth Amendment and the Proportionate Penalties Clause. After Nigel filed his opening brief, our Supreme Court decided People v. Buffard, which precludes Nigel from proceeding on his Eighth Amendment argument. And Nigel did acknowledge this in his motion to cite additional authority. Therefore, Nigel will only be proceeding on the Proportionate Penalties Clause argument. At the first stage, a post-conviction petition only needs the gist of a constitutional claim. This is a very low burden, and the petition may only be dismissed if it is found to be frivolous or patently without merit. Now here, this case stems from Nigel needing a space heater to keep his family warm. Nigel went to family and friends and was unable to get a space heater and unable to get the funds to purchase one. After he unsuccessfully looked for work, Nigel went to a known drug dealer, Hosey Burgess. Nigel became indebted to Burgess, and Burgess told him that he had to commit a robbery to pay off his debt. Burgess also threatened Nigel's life. The first attempt for an armed robbery was botched, and Nigel stated that he was relieved. Then, the next day, after Nigel believed that his debt was repaid for attempting to do the first robbery, he went to a drug dealer. Burgess threatened Nigel's three-year-old daughter, told him that his debt was not repaid, and that he would have to go and commit another one. Nigel was nervous and went to a friend for support. Nigel's friend told him that he should not cross Burgess, he should just get it over with, and that this friend would accompany Nigel to the armed robbery. Nigel went to the location, brought a gun that Burgess provided him, and after a struggle, the gun went off, which ultimately caused Hope's death. In this case, Nigel became scared when the gun went off, and he actually believed that he shot his friend, and he ran away. He did not take anything from Hope. Now, no one is making the argument that this offense is not serious. The issue here is the new research on brain development and how it talks about not being able to appreciate actions and consequences. This research depends on each youthful individual's specific characteristics. Facts in this case support that Nigel could not appreciate how needing a heater would lead to heart failure. In this case, Nigel committed a robbery, which would result in murder. And this case is different than a murder that is committed in cold blood. This was an armed robbery gone wrong that Nigel felt forced to commit after his life and his child's life was threatened. Nigel's only previous conviction was the possession of cannabis. He had completed the eighth grade. Nigel's father had been incarcerated since he was two years old, and his stepfather also has a lengthy criminal history. Nigel supported his claim in his post-conviction petition by stating that he was a 19-year-old mentally handicapped young adult who didn't graduate from high school and who had suffered drug addiction since he was a child. At his sentencing hearing, there was testimony from James Clark, who worked in community outreach, and knew Nigel. He stated that Nigel was a young man with a good heart, but his head had to be further developed, and Nigel had great difficulty in making decisions. The trial court found no factors of mitigation. The trial court stated that it did not accept the argument that Nigel could not appreciate his actions, and the court's only comment about Nigel's age was how old he would be with each possible sentence. Under the proportionate penalties clause, the trial court had a duty to consider Nigel's age in respect to his rehabilitative potential to determine whether he could be restored to useful citizenship, and this includes the research about brain development in regards to Nigel on his level of culpability. Nigel was not asking this court to hold that his sentence is a violation of the Illinois proportionate penalties clause. He is asking this court to find that he met the low burden of stating the gist of a constitutional claim. This means that his case would be remanded for second stage proceedings, so counsel would be appointed to him, his legal argument could be developed, and that Nigel would potentially have the chance to have an evidentiary hearing on his claim that his youthfulness and lack of culpability impacts his sentence in light of this new research. Our Supreme Court has not ruled on whether this new research in neuroscience and brain development may impact the sentencing of youthful offenders above the age of 17. All of our recent Supreme Court cases, including Thompson and Harris, have directed an individual above the age of 17 to file a post-conviction petition when the record isn't fully developed to address either a Miller or proportionate penalties clause claim. Nigel followed what our Supreme Court procedurally wanted him to do, and he used his only chance to do so. The state did not dispel the research of continuing brain development in youthful individuals, and nothing in the record disputes that Nigel's attributes make him less culpable under the new research about brain development, nor did the state make any argument to this effect. Additionally, any argument the state may be making that a sentence must be a de facto life sentence to make a proportionate penalties claim is incorrect. The proportionate penalties clause applies to any sentence that is imposed, regardless of the length of that sentence. All Nigel is asking is a chance to further develop the record so he can support his claim that his sentence violates the element of the proportionate penalties clause, in light of the recent research on brain development. He did exactly what our Supreme Court procedurally has asked of him, and he has met the low burden of stating the gist of a constitutional claim. Therefore, Nigel respectfully asks this Court to reverse the trial court summary dismissal of his post-conviction petition and remand his case for second stage proceedings. Does the Court have any questions? Good afternoon, Your Honors. Counsel, may it please the Court. My name is Valerie Osment, and I represent the people of the state of Illinois in this matter, the people versus Nigel generally. The sole issue on appeal is whether the trial court's first stage dismissal of the defendant's pro se post-conviction petition was proper, or the defendant's petition was privileged and patently without merit. The facts of this case are simple. The defendant, who was an adult at the time that he committed the offense of first degree murder, knowingly and voluntarily pled guilty to an amended count one of first degree murder, in exchange for the state agreeing to several things, including to recommend a cap at 40 years. The Court ultimately sentenced the defendant to 33 years, which is seven years less than what he bargained for, and is significantly less than what he may have received had this case gone to trial. So essentially, the defendant, an adult, partook in negotiations with the state for a cap of 40 years as sentencing. This led to him willfully and voluntarily pleading guilty, and thereafter the defendant was sentenced to 33 years. For the defendant to now turn around and argue that that violates the proportionate penalties clause makes absolutely no sense, because he bargained for that specifically with the state. And in fact, the proper thing for the defendant to have done would have been to file a motion to reconsider the sentence. But instead, he did file said motion, or a similar motion, but ended up withdrawing that motion, and then now in a post-conviction petition is alleging that his sentence was improper. This isn't the right venue for that sort of thing. He should have filed a motion to reconsider. He's asking this Court, basically, he's filed a motion to reconsider with this Court, saying that his sentence violates the proportionate penalties clause. The proportionate penalties clause essentially boils down to whether or not the sentence received is proportionate to the crime, first-degree murder is the most heinous crime probably that there is, or whether or not, and whether or not the sentence shocks the conscience. There is no possible way that a 33-year sentence for a defendant, an adult defendant, who committed first-degree murder shocks the conscience of the public. And the state willfully participated in negotiations with the defendant, who agreed to plead guilty and agreed to a cap of 40 years. The defendant, in her counsel's oral argument, she says that the only mention of the sentence was that it was improper. That the court made at sentencing was his reference to how old the defendant would be once he got out of prison. I have a copy of the relevant page numbers from that report of proceedings, and this can be found at Report Proceedings 103 through 106, where the Court specifically says, the relevant factors that I have considered include all of these things. I have considered as many of these as I can gather. What Mr. Bateman, his attorney, has offered and what the state has offered, and considering the circumstances of the case, some of those include a consideration of your age, consideration of the circumstances of the offense, the location of the offense, the fact that other people were present and possibly in danger, the fact that this was contemplated, planned, scheduled, arranged to some extent. I am not convinced, and I don't accept, that there was a significant compulsion involved in this case. The Court considered all of the relevant factors that he needed to. The Court goes on to say, it gives more impetus to the idea that you had time to consider withdrawal or consider and go forward. I can't accept reasonably the argument that it would be a complete surprise to anyone that in contemplating an armed robbery that someone may be injured or hurt would be a surprise. That's just not a reasonable option in my mind. The defendant had several opportunities to choose whether or not he was going to participate in this armed robbery. He did so, and I don't know in what world he thought this would go well, and clearly it didn't, and here we are. So as Your Honor's concede, the trial court correctly considered the defendant's age, even before that was a specific requirement on the new statutes in the Supreme Court case that mandates that. And after considering all of those relevant factors and balancing and determining where the defendant would be, the Court sentenced the defendant to 33 years, which, again, is seven years less than what he agreed to for the state to cap it at, and significantly less than what he could have received had he gone to trial. So unless Your Honors have any questions. Let me mention that he had opportunities to withdraw, he went on and made these choices. Isn't this exactly what the Supreme Court addressed in Mike Graham, where we talked about poor appreciation of young people until they reached late in their 20s to recognize the consequences of their actions? Isn't this exactly what the Supreme Court was talking about? And in this particular case, those are cases where the defendants were all minors, and they received sentences that were de facto life. And in this situation, no court has ever held that a 33-year sentence is a de facto life sentence for a juvenile or for an adult. And this defendant was an adult when he committed this offense. And until the legislature makes the determination that they need to retroactively make a change or change the law that mandates that offenses of this magnitude that can carry a life sentence, that can carry such high sentences, needs to come with it an appreciation of a young adult, that's not the court's job to make the law, it's the legislature's. So until that happens, this is what we have to go on. For the foregoing reasons, the state respectfully requests this court to affirm the floor reports judgment. Thank you. Mr. Vaughn? Just briefly, Your Honor. So the state is starting to proceed on to the merits of this claim and where it would occur normally during an evidentiary hearing. Here, Nigel is only required to state the gist of the constitutional claim. There was no evidence that the trial court considered this research on brain development in this case. While it did say that it took his age into consideration, it said that it did not accept the argument that he could not foresee his actions here. And as Your Honor pointed out, this is clearly what a lot of cases are starting to recognize. And while we're not raising an Eighth Amendment argument under Miller, this new research is saying that this brain development extends beyond the age of 18. And this is what Thompson and Harris, why they've directed individuals to file a post-conviction petition to develop their claims. We recognize this is not a situation for every single individual. It depends on the individual's characteristics. And we are arguing that Nigel may fall under these characteristics and that he stated the gist of a constitutional claim here. And this is a very low burden. For a post-conviction petition to be dismissed at the first stage, it has to be found either frivolous or painfully without merit. And that means it has to lack an arguable basis in either the law or fact. Now, the State did not discount the brain development research, other than saying that it should only apply presumably in cases where they are under the age of 18 in de facto life cases. However, under the proportionate penalties clause, any sentence can be challenged, regardless of the length, if it is to be disproportionate to the offense. Now, as we stated, this is a serious offense. We're just making the argument that the trial court should have potentially considered the new research on brain development. And Nigel stated the gist of a constitutional claim. There's nothing in the record disputes that he may be less culpable here. And, again, this is a very low standard. It's not the we're not asking the court to find that his sentence is a violation of the element proportionate penalties clause. We're asking that he has the chance to have counsel appointed so he can develop his legal argument so that he could potentially have a chance to have an evidentiary hearing in this case to determine whether this new research in brain development would impact him. Does your office have any questions? No, thank you.